**EL RESCATE LEGAL SERVICES, INC., Central American Refugee Center, Shamila Ramin, Fereshteh Entemadi, et al., Plaintiffs–Appellees,**

v.

**EXECUTIVE OFFICE OF IMMIGRATION REVIEW; David Milhollan, William R. Robie, Robert M. Moschorak, et al., Defendants–Appellants.**

No. 90–55292.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1991.

Decided Aug. 12, 1991.

As Amended on Grant of Rehearing and Denial of Rehearing En Banc March 10, 1992.

Francesco Isgro, Office of Immigration Litigation, Washington, D.C., for defendants-appellants.

Lee A. O'Connor, San Fernando Valley Neighborhood Legal Services, Pacoima, Cal. and Linton Joaquin, National Immigration Law Center, Los Angeles, Cal., for plaintiffs-appellees.

Maureen B. Callahan, Salem, Or. and Richard J. Higgins, Immigration Reform Law, Washington, D.C., for amici curiae.

Before BEEZER, HALL and TROTT, Circuit Judges.

## ORDER

The panel has unanimously voted to grant the petition for rehearing filed August 26, 1991, and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no judge in active service has requested a vote to rehear the matter en banc. An amended

opinion is filed herewith and the clerk shall issue the mandate forthwith.

## OPINION

BEEZER, Circuit Judge:

The district court granted Plaintiffs' request for a permanent injunction requiring full interpretation of all immigration court proceedings on the ground that partial interpretation violates rights established by the Immigration and Nationality Act (I & NA). The Executive Office of Immigration Review (EOIR) appeals, arguing that the district court had no jurisdiction to consider Plaintiffs' claims and that the court erred on the merits. We hold that the district court did have jurisdiction, and we reverse. We remand for consideration of Plaintiffs' claims that the EOIR's application of the Board of Immigration Appeals' (BIA) policy, not to interpret many portions of immigration court hearings, denies Plaintiffs their rights, privileges and opportunities under the I & NA and the Constitution.

## I

Plaintiffs brought a class action on behalf of all non- and limited-English-speaking individuals who currently are or will be subject to immigration court proceedings in the Los Angeles, El Centro and San Diego immigration courts. *El Rescate Legal Servs. v. Executive Office for Immigration Review*, 727 F.Supp. 557, 558 n. 1

(C.D.Cal.1989). Their complaint alleges that the EOIR [1] engages in a policy and practice of using incompetent translators and of not interpreting many portions of immigration court hearings.[2] The complaint alleges that this practice deprives class members of their statutory rights to present evidence, to cross-examine witnesses, and to be represented and effectively assisted by retained counsel. The complaint alleges further that the same policy and practice violates the due process and equal protection guarantees of the Fifth Amendment. Finally, the complaint alleges a violation of the Administrative Procedure Act (APA).

The district court concluded that the

EOIR's failure to require full interpretation of immigration court proceedings seriously undermines the plaintiffs' statutory right to be present at their proceedings, their right to counsel, their right to examine evidence, and their right to confront and cross-examine witnesses.

*Id.* at 560. For the same reasons, the court concluded that the EOIR policy violated the APA. *Id.* at 564. The court granted summary judgment in favor of Plaintiffs and permanently enjoined the EOIR "from failing to provide for interpretation of the entire proceedings in immigration court when an immigration judge concludes that an interpreter is required for non- or limited-English speaking class members."[3] The

1. The EOIR is the federal agency responsible for supervising the Office of the Chief Immigration Judge and the Board of Immigration Appeals. *See* 8 C.F.R. § 3.0 (1990).

2. The BIA has ruled that

[a]lthough an alien in exclusion or deportation proceedings is entitled to a fair hearing, we do not find that due process requires translation of the entire hearing. In most cases, all that need be translated are the immigration judge's statements to the alien, the examination of the alien by his counsel, the attorney for the Service, and the immigration judge, and the alien's responses to their questions. However, the immigration judge may determine, in the sound exercise of his discretion, that the alien's understanding of other dialogue is essential to his ability to assist in the presentation of his case. For example,

where a witness testifies regarding factual matters which specifically relate to the alien's own testimony, effective cross-examination may necessitate translation of the witness's testimony. On the other hand, arguments presented by counsel and the rulings of the immigration judge are primarily legal matters, the translation of which generally would not be required where the alien is represented and the protection of his interests is ensured by counsel's presence.

*Matter of Exilus*, 18 I & N Dec. 276, 281 (BIA 1982) (citations omitted).

3. The court also ordered that class members be allowed to "waive their right to have all portions of immigration court proceedings interpreted. However, such waiver will only be effective after the immigration judge has determined, on the record, that such waiver was made in a knowing, intelligent, and voluntary manner."

EOIR appeals this judgment.[4]

## II

■ The EOIR argues that the district court did not have jurisdiction to entertain Plaintiffs' suit because Plaintiffs did not exhaust their administrative remedies. The EOIR claims that both statutory and prudential considerations require exhaustion before a federal court may address Plaintiffs' claims. We review a question of subject matter jurisdiction *de novo*. *Montes v. Thornburgh*, 919 F.2d 531, 534 (9th Cir.1990).

■ "When a statute requires exhaustion, a petitioner's failure to do so deprives this court of jurisdiction." *Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir.1985). The I & NA establishes review by the courts of appeals as the exclusive means of reviewing final orders of deportation. 8 U.S.C. § 1105a(a). Final orders of exclusion may be reviewed only in a habeas corpus proceeding. *Id.* § 1105a(b). "An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." *Id.* § 1105a(c).

■ The statutory exhaustion requirement of section 1105a(c) is coextensive with the exclusivity provision of section 1105a(a). *Montes*, 919 F.2d at 537. Therefore, exhaustion of administrative remedies is statutorily required only if appellees are seeking to attack a final order of deportation or exclusion.

■ We have joined a number of other circuits in drawing a distinction between jurisdiction to rule on the merits of an individual deportation order and jurisdiction to rule on an alleged pattern and practice of constitutional or statutory violations. *See Montes*, 919 F.2d 531; *National Center for Immigrants' Rights, Inc. v. INS (NCIR III)*, 913 F.2d 1350, 1352 (9th Cir.1990), *rev'd on other grounds*, — U.S. —, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991); *National Center for Immigrants' Rights,*

*Inc. v. INS (NCIR I)*, 743 F.2d 1365, 1368–69 (9th Cir.1984); *see also Salehi v. District Director, INS*, 796 F.2d 1286, 1290 (10th Cir.1986); *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1032–33 (5th Cir. 1982), *overruled on other grounds, Jean v. Nelson*, 727 F.2d 957 (11th Cir.1984); *Jean v. Nelson*, 727 F.2d 957, 979–80 (11th Cir. 1984) (statutory as well as constitutional questions), *aff'd*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

In *Montes*, a class of asylum applicants brought suit in district court for injunctive relief regarding requirements for filing for asylum. We determined that we did not have exclusive jurisdiction under section 1105a(a) and therefore that exhaustion was not required. 919 F.2d at 534–38. We adopted the distinction, first drawn by the Eleventh Circuit, between

> the exclusive jurisdiction of the courts of appeal under Section 1105a to review "alleged procedural irregularities in an individual deportation hearing *to the extent these irregularities may provide a basis for reversing an individual deportation order*" [and] "the authority of a district court to wield its equitable powers" when confronted with "a program, pattern or scheme by immigration officials to violate the constitutional rights of aliens." [*Haitian Refugee Center*], 676 F.2d at 1033 (emphasis in original).

*Montes*, 919 F.2d at 535. We concluded that the district court had jurisdiction over the claim because the "appellees were not seeking to set aside individual deportation orders, but to obtain injunctive and declaratory relief to protect the rights of a class." *Id.* at 536.

The Supreme Court recognized a similar distinction in *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), in which an alien petitioned this court for review of his deportation order, arguing that a provision of the I & NA allowing either the Senate or the House of Representatives unilaterally to invalidate the Attorney General's suspension of his deportation was unconstitutional. The Supreme

---

**4.** The issue of competent interpretation remains *before the district court.*

Court held that the alien properly appealed directly to the court of appeals. In reaching its conclusion, the Court distinguished *Chadha,* in which the alien "directly attack[ed] the deportation order itself, and the relief he [sought]—cancellation of deportation—[was] plainly inconsistent with the deportation order," *id.* at 939, from a case such as the one before us, in which the alien "did not attack the deportation order itself but instead [sought] relief not inconsistent with it." *See id.* at 938 (citing *Cheng Fan Kwok v. INS,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968)).

The plaintiffs in the present case do not challenge the validity of any deportation or exclusion order or of any ruling in an immigration proceeding. They challenge instead the failure of the INS to require translation of all exclusion or deportation proceedings in their entirety. As in *Montes,* "the relief ... sought [is] not inconsistent with a valid deportation order, because if appellees prevailed they 'would gain only the right to remain in this country so long as it took the Attorney General to rule' " on their eligibility to be admitted into or to remain in the United States. *See Montes,* 919 F.2d at 536 (quoting *Salehi,* 796 F.2d at 1291; citing *Cheng Fan Kwok,* 392 U.S. at 213, 88 S.Ct. at 1974–75); *see also NCIR III,* 913 F.2d at 1352 ("The district court had jurisdiction since [plaintiffs] challenged the blanket provision on constitutional and statutory grounds and did not seek a review on the merits of any individual determination."). Because the appellees do not challenge final orders of deportation or exclusion, they are not required by statute to exhaust administrative remedies.

■ The EOIR urges us to require exhaustion even if we find no statutory requirement. In the absence of a statutory mandate, we have applied a prudential exhaustion requirement in cases in which: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Montes,* 919 F.2d at 537 (quoting *United States v. California Care Corp.,* 709 F.2d 1241, 1248 (9th Cir.1983)).

In the present case, as in *Montes,* "[f]urther development of the record is not necessary ... because the appellees raise legal issues not within the particular expertise of the Attorney General." *Id.* With regard to the second consideration, "[r]elaxing the exhaustion requirement would not significantly encourage bypassing the administrative process because the district court will have jurisdiction only in the rare case alleging a pattern or practice violating the rights of a class of applicants." *Id.*

■ Regarding the third factor, this court has required exhaustion where the BIA, if allowed to address the claims first, might "take action that would render unnecessary our consideration of constitutional issues." *Dhangu v. INS,* 812 F.2d 455, 460 (9th Cir.1987). However, there is no requirement of exhaustion where resort to the agency would be futile. *SAIF Corp./Oregon Ship v. Johnson,* 908 F.2d 1434, 1441 (9th Cir.1990). Thus, where the agency's position on the question at issue "appears already set," and it is "very likely" what the result of recourse to administrative remedies would be, such recourse would be futile and is not required. *Id.; see also Mathews v. Eldridge,* 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976) (Even where the administrative agency has the authority to change the challenged procedures, exhaustion is not necessary when "[i]t is unrealistic to expect that the [agency] would consider substantial changes in the current administrative [procedures] at the behest of a single [applicant] raising a constitutional challenge in an adjudicatory context.").

The BIA has announced and reaffirmed its policy regarding translation of immigration proceedings, and its understanding of the requirements of the due process clause. *See Matter of Exilus,* 18 I & N Dec. 276, 280–81 (BIA 1982); *Matter of Tomas,* Interim Dec. #3032 (BIA Aug. 6, 1987)

("[A]ll of the hearing need not be translated for the hearing to be fair.... *See Matter of Exilus*."). It would therefore be unrealistic to require Plaintiffs to exhaust their administrative remedies before bringing their claims.

 The EOIR's final jurisdictional argument is that the organizational plaintiffs lack standing. Plaintiffs correctly note that the issue is moot because the scope of the injunction is no broader than it would have been had the class members been the only plaintiffs. Furthermore, the organizational plaintiffs have alleged sufficient injury to the organizations to support standing.

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982), the Supreme Court held that where the defendants' "practices have perceptibly impaired [the organizational plaintiff's] ability to provide [the services it was formed to provide] ... there can be no question that the organization suffered injury in fact." The organizations involved in the present case were established to assist Central American refugee clients, most of whom are unable to understand English, in their efforts to obtain asylum and withholding of deportation in immigration court proceedings. The allegation that the EOIR's policy frustrates these goals and requires the organizations to expend resources in representing clients they otherwise would spend in other ways is enough to establish standing. *See id.* at 379, 102 S.Ct. at 1124.

### III

The EOIR argues that we must defer to the BIA policy expressed in *Exilus* and *Tomas* because the policy represents the INS's construction of the statutes it is entrusted to administer. Plaintiffs argue that the BIA's policy, not to require interpretation of the entire immigration court proceeding once it has determined that an interpreter is needed, violates the I & NA. The Supreme Court recognizes that Congress may delegate to an administrative agency the authority to formulate policy.

If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

The Attorney General has prescribed regulations governing proceedings commenced before a special inquiry officer under the I & NA. *See generally* 8 C.F.R. §§ 236, 242, 292, 292a. These regulations were issued pursuant to an express delegation of authority by Congress. 8 U.S.C. §§ 1226(a) (exclusion hearings), 1252(b) (deportation hearings). We uphold the Attorney General's construction of the statute because, on its face, it neither impermissibly construes the statute, *see Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–82 (quoted above), nor violates the Constitution. *See Rust v. Sullivan*, ─── U.S. ───, 111 S.Ct. 1759, 1778, 114 L.Ed.2d 233 (1991). We first explain why the Attorney General's construction of the I & NA is proper, and then proceed to the question whether the BIA's policy violates the regulatory scheme prescribed by the Attorney General.

### A

An alien has a "reasonable opportunity to be present" at his deportation hearing. 8 U.S.C. § 1252(b). The hearing may proceed in an alien's absence if he has a reasonable opportunity to be present and "without reasonable cause fails or refuses to attend or remain in attendance at such proceeding." *Id.* The statute further clarifies the protections due an alien:

Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this chapter, as *the Attorney General shall prescribe. Such regulations shall include requirements that—*

(1) the alien shall be given notice, reasonable under all the circum-

stances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government....

*Id.* (emphasis added). The statute requires far less at exclusion hearings, and commits regulating that proceeding to the Attorney General's discretion as well. 8 U.S.C. § 1226(a). In a separate section, the statute emphasizes an alien's privilege of representation, at no expense to the Government, in either an exclusion or deportation hearing. 8 U.S.C. § 1362.

1

■ A deportation proceeding commences with the filing of an order to show cause. 8 C.F.R. § 242.1(a). If an alien does not respond to routine service of an order to show cause, then an immigration officer must personally serve the alien. When personal delivery is made the immigration officer must explain the order's contents, advise the alien that any statements he makes may be used against him, advise the alien of his right to representation at no expense to the Government, advise the alien of the availability of free legal services programs and furnish the alien with a written notice of his appeal rights. 8 C.F.R. § 242.1(c). By either obtaining the alien's acknowledgement of the proceeding or personally serving him, the Attorney General affords the alien a reasonable opportunity to be present and notice of the charges against him. This construction of 8 U.S.C. § 1252(b), 1252(b)(1), (2) is neither arbitrary, capricious, nor manifestly contrary to the statute.

The Immigration Judge (IJ) opens a deportation hearing by advising the alien: of his right to representation at no expense to the Government; of free legal services programs; and that he will have a reasonable opportunity to examine and object to the evidence against him, to present evidence in his own behalf and to cross-examine witnesses presented by the Government. The IJ must require the alien to state whether he desires representation. The IJ must ascertain that the alien has received a written notice of his appeal rights. Most importantly, the IJ must "read the factual allegations and the charges in the order to show cause to the [alien] and *explain them in nontechnical language.*" 8 C.F.R. § 242.16(a) (emphasis added). These procedures once again give the alien notice of the nature of the charges against him and guard the alien's privilege of representation. *See* 8 U.S.C. § 1252(b)(1), (2).

These procedures also provide the primary means by which the Attorney General ensures that the alien can exercise the reasonable opportunities afforded by 8 U.S.C. § 1252(b)(3). Obviously the best protection of the alien's § 1252(b)(3) reasonable opportunities would come from retained counsel. Vesting reliance in retained counsel to protect the alien's opportunities is neither arbitrary, capricious, nor manifestly contrary to the statute.

Congress chose not to pay for the alien's representation, however, so the Attorney General cannot ensure protection of the alien's § 1252(b)(3) opportunities by appointing counsel. Explaining the factual allegations and the charges in the order to show cause, *in nontechnical language,* constitutes a reasonable approach to affording the alien his reasonable opportunities should he elect, or be forced,[5] to proceed without counsel. Assuming a reasonably adequate explanation by the IJ, the alien knows the facts that the Government will present against him, and their impact if proved. Once it is clear that the alien will appear pro se, the IJ has no duty to be the alien's counsel. The regulations do require, however, that the IJ preside over the proceeding in a manner that affords the alien the reasonable opportunities enumer-

---

**5.** Due to the alien's inability to obtain counsel at no expense to the Government.

ated in § 1252(b)(3). Given Congress' express instruction not to provide appointed counsel, this aspect of the Attorney General's construction of the statute is neither arbitrary, capricious, nor manifestly contrary to the statute.

The alien must admit or deny the factual allegations in the order to show cause "and his deportability under the charges contained therein." 8 C.F.R. § 242.16(b). The IJ may order the alien's deportation if the alien admits his deportability and no issues of law or fact remain. *Id.* The IJ requests assignment of a trial attorney if evidentiary development is required. *Id.* § 242.-16(c). The Government may lodge additional charges and factual allegations at any time during the proceeding. The IJ must explain such amendments to the alien, however, and inquire again whether the alien desires to retain counsel. The IJ also must advise the alien that he may have a reasonable time within which to meet the additional allegations and charges. *Id.* § 242.16(d).

An attorney would clearly provide the best method of ensuring that the alien can exercise his § 1252(b)(3) reasonable opportunities at this stage of the proceeding. If the alien is forced to proceed pro se, however, the Attorney General has sought to protect the alien's opportunities by making him aware of the facts the Government will seek to prove and the significance of those facts if proved. Then, depending on the circumstances, the IJ must afford the alien a reasonable opportunity to examine the evidence against him, so that he can object if warranted, or prepare a cross-examination of key witnesses. The IJ also must afford the alien a reasonable opportunity to put on his own evidence. Although an alien might have little familiarity with our legal system, and thus be ill-equipped to exercise these opportunities, Congress expressly instructed the Attorney General not to provide appointed counsel. Examined in light of Congress' instruction, the regulations prescribed by the Attorney General to protect the alien's reasonable opportunity to examine evidence, present evidence and cross-examine witnesses are neither arbitrary, capricious, nor manifestly contrary to the statute.

The Attorney General affords excludable aliens substantially greater protections than those required by statute. He affords these greater protections so that he maintains the constitutionality of the statute.[6] The greater protections afforded include: the option to waive a closed hearing; informing the alien of the nature and purpose of the hearing; advising the alien of his privilege of representation[7] at no expense to the Government (to comply with 8 U.S.C. § 1362); requesting the alien to indicate whether he desires representation; and advising the alien that he will have a reasonable opportunity to present evidence, examine and object to evidence, and cross-examine Government witnesses. 8 C.F.R. § 236.2(a). The IJ then presides over the hearing in such a manner that, depending on the circumstances, he affords the privileges and opportunities enumerated in the regulations. The Attorney General's construction of the statute, in which he provides protections greater than those required by Congress so that the statute's constitutionality is preserved, is neither arbitrary, capricious, nor manifestly contrary to the statute.

■ Overall, the Attorney General has adopted regulations governing deportation and exclusion proceedings that reasonably construe the statute that Congress committed to his discretion. Control over immigration is a sovereign prerogative. Once we determine that the Attorney General's construction of the statute is not arbitrary, capricious, or manifestly contrary to the statute, we cannot impose procedures that merely displace policy choices made by the sovereign. *Landon v. Plasencia,* 459 U.S. 21, 34–35, 103 S.Ct. 321, 330–31, 74 L.Ed.2d 21 (1982).

2

We must also determine whether the Attorney General's construction of the stat-

---

6. *See infra* Subpart III A 2.

7. This advising includes the same disclosures about free legal services programs as those in 8 C.F.R. § 242.

ute runs afoul of the Constitution. In such a circumstance,

> we are concerned only with the question whether, on their face, the regulations are both authorized by the Act, and can be construed in such a manner that they can be applied to a set of individuals without infringing upon constitutionally protected rights. Petitioners face a heavy burden in seeking to have the regulations invalidated as facially unconstitutional "... since the challenger must establish that no set of circumstances exists under which the Act would be valid."

*Rust,* 111 S.Ct. at 1767 (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)); *see id.* at 1767–78 (engaging in an inquiry into the validity of the Secretary of Health and Human Services' construction of Title X of the Public Health Service Act by first determining that the Secretary's construction was consistent with congressional intent, and then determining that such construction maintained the statute's constitutionality). We first address whether the Attorney General's regulatory scheme maintains the I & NA's constitutionality. We then consider whether the BIA's policy is consistent with the Attorney General's construction of the I & NA, and whether the BIA's policy maintains the I & NA's constitutionality.

■■■ A deportation hearing provides merely a streamlined determination of an alien's eligibility to remain in the United States. It has no punitive purpose. *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984). It is a civil proceeding in which many of the protections afforded in the criminal context do not apply. *Id.* at 1038, 104 S.Ct. at 3483. The judiciary determines only whether the procedures afforded satisfy the minimum requirements of due process. *Landon,* 459 U.S. at 34, 103 S.Ct. at 330.

We have spoken clearly regarding the protections that the Constitution affords aliens:

> An alien within the United States is entitled to the guaranty of procedural due process embodied in the Fifth Amendment in a deportation hearing. Constitutional due process requirements are satisfied in such an instance only by a full and fair hearing. The alien has been denied the full and fair hearing which due process provides only if the thing complained of causes the alien to suffer some prejudice.

*Nicholas v. INS,* 590 F.2d 802, 809 (9th Cir.1979) (citations omitted); *accord Hassan v. INS,* 927 F.2d 465, 468–69 (9th Cir. 1991); *Cuadras v. INS,* 910 F.2d 567, 573 (9th Cir.1990).

■■■ The Attorney General ensures that aliens receive a full and fair hearing in two ways. First, he repeatedly attempts, within his statutory authority, to assure the alien's legal representation. Second, he has prescribed a regulatory scheme in which IJs must afford aliens a reasonable opportunity to show why they should not be deported. We have approved the Attorney General's grant of discretion to IJs. *Cuadras,* 910 F.2d at 573 (refusal to issue subpoena for non-essential evidence); *Ramirez–Durazo v. INS,* 794 F.2d 491, 496–97 (9th Cir.1986) (joinder of deportation and exclusion proceedings); *Avila–Murrieta v. INS,* 762 F.2d 733, 736–37 (9th Cir.1985) (denial of continuance and refusal to make a record or hear counsel's arguments on certain issues). We have also corrected IJs when they have abused their discretion. *Baires v. INS,* 856 F.2d 89, 92–93 (9th Cir.1988) (abuse of discretion not to grant continuance so that alien could present important witness testimony). The mere fact that part of the Attorney General's regulatory scheme for protecting aliens' constitutional interests relies on IJs to properly exercise their discretion does not render the scheme unconstitutional. *See Rust,* 111 S.Ct. at 1767 (facial invalidity requires no set of circumstances under which regulatory scheme would be valid).

B

The BIA's policy does not require translation of an alien's entire deportation or exclusion proceeding. Certain phases of the proceeding are translated as a matter

of course. The IJ exercises his discretion to determine whether protection of an alien's reasonable opportunities requires additional translation. *See Matter of Exilus*, 18 I & N Dec. at 281.

### 1

We see no requirement in the I & NA that the EOIR provide translation of an entire deportation or exclusion proceeding. We see no requirement in the Attorney General's regulatory scheme that the EOIR provide translation of an entire deportation or exclusion proceeding. We have found no case law interpreting the I & NA as requiring that the EOIR provide translation of an entire deportation or exclusion proceeding.

The BIA's policy does not deny that aliens have a reasonable opportunity to be present, to examine unfavorable evidence, to present favorable evidence and to cross-examine Government witnesses. In fact, the BIA acknowledges that "the immigration judge may determine, in the sound exercise of his discretion, that the alien's understanding of other dialogue is essential to his ability to assist in the presentation of his case." *Matter of Exilus*, 18 I & N Dec. at 281. The IJ's sound exercise of discretion thus protects the reasonable opportunities that the I & NA and the Attorney General's regulatory scheme afford the alien. Only if the IJ abuses his discretion does the alien suffer a deprivation of his reasonable opportunities. The BIA and this court stand ready to correct such abuses. The BIA's policy is neither arbitrary, capricious, nor manifestly contrary to the statute or its construction by the Attorney General. *See Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–82. We hold that the BIA's policy, not to require interpretation of the entire immigration court proceeding once it has determined that an interpreter is needed, conforms both to the I & NA and its interpretive regulations.

### 2

The Constitution requires that an alien receive a full and fair hearing, which is denied only if the error assigned causes the alien to suffer some prejudice. *Nicholas*, 590 F.2d at 809. Even where an IJ clearly abused his discretion, we found the error harmless because the alien was clearly deportable. *Tejeda–Mata v. INS*, 626 F.2d 721, 726–27 (9th Cir.1980) (refusal to allow interpretation of key witness' testimony), *reh'g en banc denied*, 665 F.2d 269 (9th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). If the IJ properly exercises his discretion to afford the alien his reasonable opportunities, the alien receives a full and fair hearing, and all the process he is due. Plaintiffs have failed to show " 'that no set of circumstances exists under which the Act would be valid. The fact that [the regulations] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them] wholly invalid.' " *Rust*, 111 S.Ct. at 1767 (quoting *Salerno*, 481 U.S. at 745, 107 S.Ct. at 2100) (alterations made by the Court in *Rust*). We hold that the BIA's policy is facially constitutional. Because the BIA's policy conforms to the I & NA, its interpretive regulations and the Constitution, the BIA's policy constitutes a permissible construction of the I & NA. We refuse to substitute our policy judgment for that of the agency to which Congress committed discretion. *See Landon*, 459 U.S. at 34–35, 103 S.Ct. at 330–31.

### IV

On its face, the BIA's policy violates neither the Constitution nor the I & NA as construed by the agency to which Congress committed discretion. Although the district court erred in determining that the BIA's policy denied aliens statutory rights, it is possible that the EOIR applies the BIA's policy in such a manner that it systematically denies the class either its statutory privileges and opportunities or its constitutional rights. Because the district court did not address whether the class' privileges, opportunities or rights were violated by the EOIR's application of the BIA's policy, and because the record lacks the factual determinations necessary to reach such a conclusion, we remand this

aspect of the class' claim for consideration by the district court.

Although we discern no equal protection claim, plaintiffs may present any such argument to the district court as well since the district court based its decision only on statutory grounds.

## V

■ The district court granted summary judgment "as to the plaintiffs' ... third cause of action, brought under the APA." 727 F.Supp. at 564. Plaintiffs rely on 5 U.S.C. § 702. Section 702 does not create substantive rights. There is no right to sue for a violation of the APA in the absence of a "relevant statute" whose violation "forms the legal basis for [the] complaint." *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 110 S.Ct. 3177, 3185–86, 111 L.Ed.2d 695 (1990); 5 U.S.C. § 702. Because plaintiffs have yet to prove a violation of the I & NA, there can be no APA violation. If the plaintiff class can show on remand that its statutory protections are violated by the EOIR's application of the BIA's policy, it will have the basis for an APA claim.

## VI

The district court's grant of summary judgment and its order enjoining the EOIR from failing to provide interpretation of immigration proceedings in full are REVERSED. The case is REMANDED to the district court for consideration of the class' claims that it is injured by the EOIR's application of the BIA's policy. Plaintiffs have not prevailed, and their request for attorney's fees is accordingly DENIED. *See* 28 U.S.C. § 2412. Both sides shall bear their own appeal costs.