**PROJECT SENTINEL, a fair housing agency, individually and on behalf of the General Public, Plaintiff,**

v.

**EVERGREEN RIDGE APARTMENTS, et al, Defendants.**

**No. C–98–4369 VRW.**

United States District Court, N.D. California.

March 26, 1999.

Dennis John Woodruff, Dennis John Woodruff Law Offices, Oakland, CA, for Plaintiff.

Paul R. Johnson, Nevin & Hall LLP, Oakland, CA, for Defendants.

### AMENDED ORDER.

WALKER, District Judge.

Before the court are defendants' motions to dismiss and for summary judgment made on the ground that plaintiff, not having suffered a direct and palpable injury as a result of defendants' alleged conduct, lacks standing to bring this action. For the reasons stated below, the court holds that plaintiff lacks standing to assert its claims. Accordingly, summary judgment is GRANTED in favor of defendants and against plaintiffs.

Plaintiff, Project Sentinel, is a non-profit corporation formed for the purpose of "monitoring and investigating housing providers and bringing about compliance with state and federal fair housing laws." Compl ¶ 4. Defendants, owners and operators of an apartment complex, are accused of maintaining a discriminatory policy toward families with children and of

failing to provide handicap access to rental offices. Plaintiff seeks declaratory and injunctive relief as well as damages including attorney fees on behalf of itself as an organization. Plaintiff's alleged injury is the frustration of its effort to monitor housing practices and gain compliance with housing laws.

Specifically, plaintiff alleges that defendants' discriminatory treatment of families has:

> frustrated [plaintiff's] mission requiring it to expend scarce resources to investigate and document said practices, and will require further expenditures of staff time to monitor and perform compliance investigations.

Compl ¶ 21. Similarly, defendants' alleged failure to provide a wheelchair ramp has:

> frustrated [plaintiff's] mission to insure that the Fair Housing Act and other fair housing laws are complied with within its area of responsibility, and by causing it to expend its resources to investigate and take steps to remedy said violations.

Compl ¶ 27. These allegations fail to establish an injury-in-fact as required by Supreme Court authority construing Article III, § 2 of the Constitution. See *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ Article III, § 2 confers jurisdiction to federal courts over "cases" and "controversies." One element of the case or controversy requirement is that a plaintiff, through its complaint, must establish that he has standing to sue. *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997). And, to establish standing to sue, a plaintiff must allege that he has, as a result of defendants' actions, suffered a *distinct* and *palpable* injury. See *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

■ Just as an individual lacks standing to assert generalized grievances about the conduct of the government, so an organization's abstract concern about a subject that could be affected by an adjudication fails to substitute for the concrete injury required by Article III. See *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). If, however, an organization points to a concrete and demonstrable injury to its activities, not simply a setback to the organization's abstract social interests, the organization may successfully allege an injury in fact. See *Havens,* 455 U.S. at 379, 102 S.Ct. 1114. In other words, an organization establishes an Article III injury if it alleges that unlawful action has increased the resources the group must devote to programs independent of its suit challenging the unlawful action.

The scope of the injury requirement was addressed under similar circumstances by the Supreme Court in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). In *Havens,* a realty company and one of its employees were alleged to have engaged in racial "steering" in violation of the Fair Housing Act. Among the plaintiffs was a housing organization called Housing Opportunities Made Equal ("HOME"), whose mission as alleged in the complaint was "to make equal opportunity in housing a reality." HOME alleged that it had suffered injury as a result of the unlawful steering in that its counseling and referral services had been frustrated by the discriminatory conduct and by the consequent diversion of its financial resources to identify and counteract the unlawful conduct. The Supreme Court held that HOME was entitled to sue in its own right.

The Court wrote:

> In determining whether HOME has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual: Has the plaintiff " 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction?" * * * If, as broadly alleged, petitioner's steering practices have perceptibly impaired HOME's ability to provide counseling and referral services

for low–and moderate–income home-seekers, there can be no question that the organization has suffered injury in fact. *Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests.*

Id at 378–79, 102 S.Ct. 1114 (citations omitted) (emphasis added).

■ Plaintiff's complaint, however, alleges nothing more than a setback to the organization's abstract social interest in gaining compliance with fair housing laws. Plaintiff does not allege that it provides any service or is engaged in any other enterprise independent of this action that might be frustrated by defendants' allegedly unlawful conduct. Plaintiff does not claim that its effort to monitor housing practices and gain compliance with housing laws has diverted its resources from some other enterprise. Rather, plaintiff's alleged enterprise is itself nothing more than the monitoring and investigating of housing providers and the bringing about of compliance with state and federal fair housing laws.

Plaintiff cannot manufacture standing by first claiming a general interest in lawful conduct and then alleging that the costs incurred in identifying and litigating instances of unlawful conduct constitute injury in fact. This court cannot, constitutionally, exercise jurisdiction over such a case. Plaintiff's complaint is, therefore, properly subject to dismissal.

■ Defendants, however, move not only for dismissal but also for summary judgment. Even if the complaint's allegations were sufficient to establish standing, something more than naked allegations is required to avoid summary judgment. See *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers,* 141 F.3d 71, 76 (3rd Cir.1998). Because the elements of standing are not mere pleading requirements but are in fact an indispensable part of plaintiff's case, each element must be supported at the sum-

mary judgment stage in the same way as any other matter on which the plaintiff bears the burden of proof. See *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ In order to defeat defendants' motion for summary judgment, plaintiff must submit affidavits or other evidence showing through specific facts that it was directly affected by the alleged discrimination. Plaintiff's allegations of frustration, however, fail to establish that plaintiff's operations were directly harmed as a result of the allegedly discriminatory conduct. Plaintiff supplies no evidence of any injury other than the diversion of funds and other resources to pursuit of this litigation. Moreover, this "evidence" consists merely of conclusory statements made by plaintiff's attorney in his declaration.

Plaintiff, through its attorney's declaration, asserts that its resources have been diverted from "its educational, counseling, and landlord-tenant mediation functions to test and document the discrimination that appears to have occurred in this case." Woodruff Decl ¶ 15. It is true that if an organization alleges or is able to show that it has devoted additional resources to some area of its effort in order to counteract discrimination, the organization has met the Article III standing requirement of injury in fact. See *Havens,* 455 U.S. at 379, 102 S.Ct. 1114. Litigation expenses alone, however, cannot suffice. See *Fair Housing Council,* 141 F.3d at 78–79; *Fair Employment Council of Greater Washington, Inc., v. BMC Marketing, Corp.,* 28 F.3d 1268 (D.C.Cir.1994). *Spann v. Colonial Village, Inc.,* 899 F.2d 24 (D.C.Cir. 1990).

In *Spann,* the court of appeals held that in order to establish standing, an organization must point to a "concrete and demonstrable injury to [its] activities." Id. at 27. Circuit Judge Ruth Bader Ginsburg, writing for the panel, explained that merely devoting funds to support a lawsuit will not suffice to establish an injury within the scope of Article III.

An organization cannot, of course, manufacture a suit from the expenditure of resources on that very suit. Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation.

Id at 27. This result is in conformity with the Supreme Court decision in *Havens*.

*Havens* did not base its holding in favor of standing merely on the diversion of resources to litigation, but rather on the alleged injury that the defendants' actions themselves inflicted upon the plaintiff's referral and counseling programs. See *Havens*, 455 U.S. at 379, 102 S.Ct. 1114. To be sure, the Court did mention the drain on the plaintiff's resources. But this drain sprang from the plaintiff's efforts to counteract the effect of the defendants' allegedly illegal practices on the plaintiff's counseling and referral services, not merely from the expense of the ensuing investigation and litigation. The litigation expenses were merely a secondary manifestation of the primary injury inflicted by the defendants' practices on plaintiff's counseling and referral operations.

The plaintiff in the present case, by contrast, does not allege that defendants' conduct directly obstructed the educational, counseling or mediation services referenced in its attorney's declaration. Rather, the sole injuries alleged are to plaintiff's abstract goals and the cost of initiating this suit. This suit is not alleged to have been made necessary by any detrimental impact of defendants' actions on plaintiff's *operations*. In other words, plaintiff does not allege injury to itself independent of its decision to divert resources away from the pursuit of its abstract goals to support this suit.

Plaintiff's reliance on dictum in *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review* is misplaced. 959 F.2d 742, 748 (9th Cir.1991). The only portion of that opinion bearing on the issue at bar is a single sentence:

The allegation that the EOIR's policy frustrates these goals and requires the organizations to expend resources in representing clients they otherwise would spend in other ways is enough to establish standing.

*Id.* at 748. This sentence, however, is not necessary to *El Rescate*'s holding and is, therefore, dictum. See *id* ("the issue [of the organizational plaintiff's standing] is moot"). As dictum, it is merely of persuasive value to this court. Nonetheless, plaintiff contends that, under *El Rescate*, a defendant's interference with an organizational plaintiff's abstract *goals*, in combination with that plaintiff's subsequent diversion of resources to litigation against the defendant, is sufficient to establish an Article III injury in fact.

The unfortunate language of the above sentence is indeed susceptible to plaintiff's reading. Plaintiff, however, ignores the facts of the underlying case. The plaintiff organization in *El Rescate* provided legal assistance to non-English speaking clients. The failure of the defendants to provide translators at immigration court proceedings directly frustrated the organization's ability to provide legal services. Thus, despite the loose wording of the dictum cited by plaintiff, the organizational plaintiff in *El Rescate* was in fact a typical *Havens* plaintiff: The organization's diversion of resources to litigation was the result of harm inflicted directly upon its ability to provide its services, not merely upon its abstract social interests or goals. Plaintiff's reading of *El Rescate* ignores this critical distinction and would, as noted above, completely eviscerate Article III's requirement of an injury in fact.

Under *Havens*, a diversion of resources to litigation evidences an injury when such a diversion is made necessary by the defendant's frustration of a plaintiff organization's "*activities*," not merely its abstract social interests. Plaintiff cannot manufacture standing by asserting an abstract interest in "monitoring and investigating housing providers and bringing about compliance with state and federal housing laws" and then claiming the cost of litiga-

tion as the *sole* underlying Article III injury. Rather, plaintiff must demonstrate that the defendants' allegedly unlawful conduct somehow affected plaintiff's ability to operate, thereby giving rise to the need to divert funds to litigation. In the present case, defendants' alleged conduct did not obstruct plaintiff's mission, it created plaintiff's mission.

By the mere bringing of his suit, every plaintiff demonstrates his belief that a favorable judgment will make him happier. Presumably every such plaintiff would prefer to allocate elsewhere the resources spent on such litigation. And, although a litigant may derive great comfort and joy from the vindication of a perceived wrong inflicted upon another, neither that psychic satisfaction nor the diverted cost of the litigation can generate an Article III case or controversy because neither constitutes a cognizable Article III injury. See *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 1018–19, 140 L.Ed.2d 210 (1998). A contrary rule would drain the Article III standing requirement of any import.

Because plaintiff has not alleged a personal stake in the outcome of the controversy to warrant its invocation of federal court jurisdiction, summary judgment in favor of defendants and against plaintiff is GRANTED.

The clerk shall enter judgment, close the file and terminate all pending motions.

IT IS SO ORDERED.