IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington nonprofit organization, | No. 84640-0-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE PUBLIC DISCLOSURE COMMISSION, a State of Washington Government Agency, and WASHINGTON FEDERATION OF STATE EMPLOYEES, a Washington labor union, | |
| Respondents. | |

COBURN, J. — Freedom Foundation filed an administrative complaint with the Washington State Public Disclosure Commission (PDC) alleging that the Washington Federation of State Employees (WFSE) was a political committee that violated the Fair Campaign Practices Act (FCPA). After a preliminary investigation, the PDC dismissed the complaint, finding no further investigation was warranted. Freedom Foundation sought judicial review under the Administrative Procedure Act (APA). The superior court dismissed the case with prejudice because the Freedom Foundation did not have standing to petition for judicial review under the APA. We affirm.

FACTS

The Freedom Foundation is a nonprofit organization that seeks to "educate

Citations and pin cites are based on the Westlaw online version of the cited material.

public employees about their rights regarding union representation, membership, and dues payment." The Foundation states that its primary focus is "to inform public employees who disagree with their union that they have a constitutional right not to associate with, nor financially to support, their union." One way Freedom Foundation accomplishes this goal is by providing public employees with information about the "extent to which unions engage in electoral political activity." To obtain this information, the Foundation "expends significant resources" conducting research to ensure that unions comply with the reporting requirements of the FCPA, codified at chapter 42.17A, RCW.

On April 14, 2021, Freedom Foundation filed a complaint with the Public Disclosure Commission, alleging that WFSE, a union representing employees of Washington state, had failed to register as a political committee and failed to file the contribution and expenditure reports required by the FCPA. The Foundation specifically alleged that WFSE's receipt of $200,000 from the American Federation of State, County, and Municipal Employees (AFSCME)[1] and the expenditure of $15,000 to the Retired Public Employees Council of Washington (RPEC) made the group a political committee under the FCPA. The Foundation asserted that these financial transactions created a status that subjected WFSE to certain reporting requirements under the FCPA that they had failed to follow. In its complaint, the Foundation requested that the PDC investigate the alleged lack of compliance and appropriately enforce the FCPA. If the PDC found WFSE to be a political committee under the FCPA, WFSE would be required to report certain financial transactions to the PDC, which would then be

_____

[1] WFSE is a statewide labor organization affiliated with the national AFSCME labor union.

2

accessible through a public database maintained by the PDC.

The PDC is permitted to investigate violations of the FCPA on its own or in response to a complaint. RCW 42.17A.105(5). When it receives a complaint, the PDC is permitted to conduct an investigation and enforce the FCPA where appropriate, refer the matter to the attorney general, or dismiss a complaint after conducting a preliminary review when appropriate. RCW 41.17A.755(1)(a)-(c).

In July 2021, the PDC sent a letter to Freedom Foundation informing it that the commission had completed a preliminary investigation of the complaint and concluded that there was "no evidence warranting" a further investigation. The PDC noted that the WFSE's receipt of $200,000 from AFSCME did not make the WFSE a political committee because the "grant received from AFSCME and deposited into WFSE's general treasury did not make WFSE or WFSE's general treasury account a political committee as a receiver of contributions." It also noted that WFSE's $15,000 expenditure to RPEC was not intended to be deposited by RPEC into a political committee account and the fact that RPEC inadvertently did so did not make WFSE a political committee. PDC dismissed the matter in accordance with RCW 41.17A.755(1).

Freedom Foundation then petitioned the Thurston County Superior Court under the Administrative Procedure Act (APA), chapter 34.05 RCW, for judicial review of the PDC's decision to dismiss its complaint. The PDC moved to dismiss the case under CR 12(b)(6) contending that the Freedom Foundation lacked standing to petition for judicial review under the APA. Freedom Foundation claimed organizational standing. To support its argument, the Foundation submitted the declaration of Maxford Nelson, the Foundation's Labor Policy Director. In his declaration, Nelson stated there was no other

source of information that was as easy to access or had the same timely reporting requirements as the PDC's database.  Nelson claimed that because the PDC dismissed its complaint, the Foundation "had to expend additional resources engaging in more cumbersome research" that required staff and resources that would otherwise be "used by the Foundation to advance its mission in other ways."

The trial court granted PDC's motion and dismissed the case with prejudice.[2]

Freedom Foundation appeals.[3]

DISCUSSION

Standard of Review

We review a trial court's ruling to dismiss a claim under CR 12(b)(6) de novo. Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007).  Dismissal is proper if, beyond a reasonable doubt, the plaintiff cannot prove any set of facts that would justify recovery.  Id.  A trial court's decision on standing is reviewed de novo.  City of

---

[2] This case is the fourth attempt by Freedom Foundation to appeal the dismissal of a complaint to the PDC after previously having its request for judicial review dismissed for lack of standing under the APA.  See Freedom Found. v. Bethel Sch. Dist., 14 Wn. App. 2d 75, 469 P.3d 364 (2020) (holding that Freedom Foundation had no standing and rejecting its claims that it was a party to the complaint and that it was injured because the PDC decision created a precedent that could be held against the Freedom Foundation in future complaints); Freedom Found. v. Serv. Emps. Int'l Union Pol. Educ. & Action Fund, No. 53889-0-II, slip op. (Wash. Ct. App. Feb. 9, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2053889-0-II%20Unpublished%20Opinion.pdf (holding that the Freedom Foundation had no standing and rejecting its claims that it was a party to the complaint, suffered competitive harm where opponents will be able to cite to PDC decisions, and had associational standing because its members were harmed by the decision); Freedom Found. v. Amalg. Transit Union Legis. Council, No. 55642-1-II, slip op. (Wash. Ct. App. Feb. 15, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2055642-1-II%20Unpublished%20Opinion.pdf (holding that Freedom Foundation had no standing and rejecting its claims to be a party to the complaint, suffered competitive injury, and had associational standing on behalf of its supporters).  The Freedom Foundation does not repeat its previous standings argument in the instant case.

[3] Freedom Foundation asserted additional claims on appeal.  However, because the issue of standing is dispositive and we affirm the superior court, we do not address the other claims.

Burlington v. State Liquor Control Bd., 187 Wn. App. 853, 861, 351 P.3d 875 (2015).

Injury-In-Fact

The APA generally provides the exclusive means of judicial review of an agency action. RCW 34.05.510. Under the APA, a party has standing for judicial review where they are "aggrieved or adversely affected by the agency action." RCW 34.05.530. A person is aggrieved or adversely affected when three conditions are present:

    (1) The agency action has prejudiced or is likely to prejudice that person;

    (2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

    (3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

RCW 43.05.530. The first and third prongs make up the "injury-in-fact" requirement, while the second prong provides the "zone of interest" requirement. Allan v. Univ. of Wash., 140 Wn.2d 323, 327, 997 P.2d 360 (2000). The party challenging an agency action has the burden to prove all three requirements to prove standing. Id.; KS Tacoma Holdings, LLC v. Shorelines Hr'gs Bd., 166 Wn. App. 117, 127, 272 P.3d 876 (2012).

Washington courts interpret the injury-in-fact prongs consistently with federal case law. Snohomish County Pub. Transp. Benefit Area v. Public Emp't Rel. Comm'n, 173 Wn. App. 504, 513, 294 P.3d 803 (2013) (citing KS Tacoma Holdings, 166 Wn. App. at 126-27)). An injury-in-fact is an invasion of a legally protected interest. Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). This invasion must be "concrete and particularized" and not "conjectural" or "hypothetical." Lujan, 504 U.S. at 560 (citing Sierra Club v. Morton, 405 U.S. 727, 740-41 n.16, 92 S. Ct. 1361, 31 L. Ed. 636 (1972)). There must be a "causal connection

between the injury and the conduct complained of," meaning the injury has to be "fairly . . . trace[able] to the challenged action of the defendant." Id. (alteration in original) (quoting Simon v. Eastern Ky. Welfare Rts. Org., 426 U.S. 26, 41-42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)).  To meet the injury-in-fact test, "'a person must allege facts demonstrating that he or she is specifically and perceptibly harmed by the agency decision.'" Freedom Found. v. Bethel Sch. Dist., 14 Wn. App. 2d 75, 86, 469 P.3d 364 (2020) (internal quotation marks omitted) (quoting Patterson v. Segale, 171 Wn. App. 251, 259, 289 P.3d 657 (2012)).

Where an organization seeks standing to sue, it must "demonstrate organizational standing by showing that the challenged 'practices have perceptibly impaired [its] ability to provide the services [it was] formed to provide.'" East Bay Sanctuary Covenant v. Trump, 932 F.3d 742, 765 (9th Cir. 2018) (quoting El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Rev., 959 F.2d 742, 748 (9th Cir. 1991)). One way an organization can show organizational standing is to show that "independent of the litigation" the challenged decision or policy "'frustrates the organization's goals and requires the organization to expend resources in representing clients they otherwise would spend in other ways.'" Id. (internal quotation marks omitted) (quoting Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 943 (9th Cir. 2011) (en banc)).  Where a defendant's practices have "perceptibly impaired [the organizational plaintiff's] ability to provide [the services it was formed to provide] . . . there can be no question that the organization suffered injury in fact." El Rescate, 959 F.2d at 748 (alterations in original) (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982)).

Freedom Foundation asserts organizational standing. It argues that its purpose is to "counsel and educate public workers as to the electoral political activity of the unions representing them," ultimately "reduc[ing] the influence of large organizational contributors in Washington's elections." The Foundation posits that by dismissing its complaint, PDC "forecloses entirely the Foundation's ability to counsel and educate public workers on significant electoral political activity in Washington in a timely manner." The Foundation claims that because the PDC dismissed its complaint, it was "forc[ed] . . . to expend and divert additional economic resources to investigate information that should be easily and immediately available in the PDC database." The Foundation argues that because the PDC dismissed its complaint and did not include the WFSE expenditure in its public database, the Foundation was forced to use "alternative methods for investigating WFSE's political activity" which are "more cumbersome, disparate, and time-consuming than the relatively easy method of simply accessing the PDC database." The Foundation explains that "it is much easier to review a political committee's report of their expenditures, than search through every other reporting entity to see if they report receiving a contribution."

First, Freedom Foundation asserts that the "extra sums" it expended "to counteract" the PDC's decision confers standing. However, an organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1018 (9th Cir. 2013) (citing La Asociacion de Trabajadores de Lake Forest v. Lake Forest, 624 F.3d

1083, 1088 (9th Cir. 2010)). To confer organizational standing, economic harm must be "independent of the litigation." East Bay, 932 F.3d at 765; Walker v. City of Lakewood, 272 F.3d 1114, 1124 n. 3 (9th Cir. 2001) (standing must be established independent of the lawsuit itself). To the extent, the Freedom Foundation suggests that it is economically harmed by having to expend resources on legal efforts such as this litigation to counteract the PDC's decision, such expenditure does not amount to an economic harm sufficient to confer organizational standing.

Next, Freedom Foundation argues that it is economically harmed because it had to divert economic resources from its original mission due to the PDC's inaction against WFSE. While the Foundation cites several cases for this proposition, the facts of those cases distinguish them from the facts before this court. We address each in turn.

In El Rescate, an organization providing legal aid in immigration courts challenged the Board of Immigration Appeals' provision of language interpretation services during immigration court hearings as inadequate. 959 F.2d at 745. The court there held that plaintiffs had established injury in fact sufficient for organizational standing because they had shown that the Board's decisions not to provide adequate interpretation services had required them to spend additional resources in representing largely Central American refugee clients who did not speak or understand English that would have otherwise been spent on other aspects of representation. Id. at 748.

In Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, the advocacy group was found to have organizational standing where the city of Redondo Beach enacted an ordinance effectively prohibiting the solicitation and hiring of day laborers at traffic intersections. 657 F.3d 936, 940 (9th Cir. 2011). Comite submitted

8

declarations explaining that, rather than focusing its resources on its original mission to "strengthen and expand the work of local day laborer organizing groups," enactment of the ordinance required it to divert its resources toward meeting with individual laborers to explain the ordinance and assisting arrested day laborers with their criminal cases stemming from the ordinance. Id. at 943. Comite employees testified that the time and resources it undertook in those efforts would have been used toward its "core organizing activities." Id. The court held that Comite had established both an injury in fact and a causal connection between the ordinance and the injury, giving it organizational standing to challenge the ordinance. Id.

In Valle del Sol Inc., an organization challenged a collection of Arizona statutes enacted to criminalize the harboring and transportation of unauthorized aliens[4] within the state. Valle del Sol Inc., 732 F.3d at 1012. The plaintiffs were a collection of organizations who ran programs offering transportation and shelter to unauthorized aliens in Arizona largely through the efforts of volunteers. Id. at 1018. The plaintiffs showed evidence that the new statutes had created a reasonable fear of prosecution among volunteers and that the organizations had to use their resources to educate volunteers and counteract the fears created by the statutes, frustrating their collective purpose to arrange and provide transportation and shelter to unauthorized aliens within Arizona. Id. As a result, the court held that plaintiffs had organizational standing to

---

[4] We recognize the criticism of the use of the term "alien," but defer to the Ninth Circuit's use of the term "unauthorized aliens" in this context given the term "alien" was expressly used in the relevant Arizona statute and the fact Congress has provided legal definitions for such terms in federal immigration law. See Valle del Sol Inc., 732 F.3d at 1012 n.1 (citing Lozano v. City of Hazleton, 724 F.3d 297, 300 n. 1 (3d Cir.2013)); 8 U.S.C.A. § 1101(a)(3) (defining the term "alien" as any person not a citizen or national of the United States.).

challenge the statute because they had shown they were required to divert resources to counteract the frustration of their missions.

In another case, the Fair Housing Council of San Fernando Valley brought suit against Roommate.com, a service used to pair potential roommates, alleging that it provided a discriminatory list of criteria to its users in violation of the Fair Housing Act. Fair Housing Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216, 1218 (9th Cir. 2012). The Fair Housing Council argued that it had organizational standing because it had used resources to investigate the alleged violations and undertook new education and outreach campaigns targeting discriminatory roommate advertising that would have otherwise been used toward its central mission. Id. at 1219. The court held that the council did have organizational standing based on that diversion of resources. Id.

In another case in which an organization argued organizational standing to challenge the non-action of a state agency, a collection of civil rights groups challenged the dismissal of a complaint. The National Voter Registration Act requires states to distribute voter registration materials and assist with registration in public assistance offices. National Council of La Raza v. Cegavske, 800 F.3d 1032, 1034-35 (9th Cir. 2015). The plaintiff organizations sued the Nevada Secretary of State and Director of Nevada's Department of Health and Human Services claiming that the two had failed to provide voter registration information and assistance in their offices providing public assistance in violation of the National Voter Registration Act. Id. at 1036-37. The court found that the groups had organizational standing based on the evidence they provided showing that they made additional expenditures holding voter registration drives in

areas where constituents should have had access to that information at public assistance offices. Id. at 1039. The court noted that the organizations had "clearly" alleged that they changed their behavior as a result of the violations and would have put those resources toward "some other aspect of their organizational purpose–such as registering voters the [act's] provisions do not reach, increasing their voter education efforts, or any other activity that advances their goals." Id. at 1040.

In each of these cases where the organizations established standing, each organization alleged that it had to change its behavior related to its mission in a specific way because of a government action or inaction. Here, Freedom Foundation made no such allegation. It submitted one declaration stating only that if the WFSE were required to register with the PDC as a committee and comply with those reporting requirements, "Foundation staff would have had to spend less time researching the nature, structure, and extent of its electoral political activity." The Foundation claims it "will be forced to expend more resources and staff time to attempt to ascertain the nature, structure, and extent of unions' electoral political activity from inferior alternative sources in order to continue communicating this information to its supporters, the general public, and to union-represented employees."

Certainly, whenever the PDC requires political committees to report its expenditures, it makes it easier for the public to access such information. But the Foundation has failed to allege that it is specifically and perceptibly harmed by PDC exercising its discretion to not investigate further. The PDC correctly argues that the Freedom Foundation is in the exact same position it was in before its decision to

11

dismiss the complaint, and, thus, it cannot establish that PDC's decision sufficiently caused injury to establish standing.

The Foundation states that alternative sources do not provide the information sought in a manner that is "as timely or comprehensive" as that required "by the Fair Campaign Practices Act." The procedural history of this case suggests that the time, effort and expense of having to rely on alternative sources for information is exactly what the Freedom Foundation did to initiate its complaint with the PDC. By its own description and actions, its mission includes acting as a watchdog to ensure public unions such as the WFSE comply with the FCPA. The Foundation states it "expends significant resources" conducting research to ensure that unions comply with the reporting requirements of the FCPA. The Foundation's ability to investigate an entity may be easier when the PDC declares that entity to be a political committee, thus requiring it to file reports in compliance with the FCPA. However, that does not mean the Foundation is injured by a non-action by the PDC when it endeavors into the same types of research both before and after the PDC's decision.

Unlike El Rescate Legal Services, Comite de Jornaleros de Redondo Beach, Valle del Sol Inc., Fair Housing Council of San Fernando Valley, and National Council of La Raza, Freedom Foundation has not alleged that the challenged action or inaction has impaired its ability to provide the services it was formed to provide. Freedom Foundation focuses in particular on the actions in El Rescate and states that the harm it alleges here is comparable. However, in El Rescate, organizations providing legal services to immigrants were forced to find their own interpretive services rather than rely on the inferior interpretation services of the courts. El Rescate, 959 F.2d at 745. This is

something that, but for the court's inaction in obtaining adequate interpretation, they would not be required to do as part of their provision of legal services. Freedom Foundation here is not taking on an additional task as the result of the PDC's non-action. The Foundation states only that inclusion in the PDC database would provide an easier avenue to obtain the information they seek in addition to the more resource intensive methods it currently employs.

We conclude that the Freedom Foundation has not established an injury-in-fact to confer organizational standing. Because the Foundation fails to meet the injury-in-fact test, we need not determine whether its interests satisfy the zone of interest test. Patterson, 171 Wn. App. at 258 n. 5.

We affirm.

Coburn, J.

WE CONCUR:

Díaz, J.

Smith, A.C.J.