272 P.3d 876 (2012)
166 Wash.App. 117
KS TACOMA HOLDINGS, LLC, Appellant.
v.
SHORELINES HEARINGS BOARD; David Murphy; Murphy Varey, P.S.; Site-4 Foss Waterway, LLC; Hollander Investments, INC.; and City of Tacoma, Respondents.
No. 41361-2-II.
Court of Appeals of Washington, Division 2.
January 24, 2012.
*879 David Alan Bricklin, Claudia Macintosh Newman, Bricklin & Newman, LLP, Seattle, WA, for Appellant.
Molly Anne Lawrence, Duncan McGehee Greene, GordonDerr LLP, Seattle, WA, Jeff H. Capell, City of Tacoma Atty Office, Tacoma, WA, for Respondents.
VAN DEREN, J.
¶ 1 KS Tacoma Holdings appeals the Shorelines Hearings Board's summary judgment order in favor of Hollander Investments and the city of Tacoma (City). The Board's summary judgment order found KS Tacoma did not have standing to appeal a permit revision granted to Hollander for development on the Thea Foss Waterway in Tacoma, Washington. Because KS Tacoma did not raise any genuine issue of material fact precluding summary judgment on the issue of its standing, we affirm.

FACTS
¶ 2 This appeal concerns proposed development on the Thea Foss Waterway in Tacoma, Washington. The Thea Foss Waterway consists of approximately 3.5 miles of shoreline adjacent to downtown Tacoma. The Thea Foss Waterway is an important development area for the City because of its proximity to the central business district, Union Station, the Tacoma Dome, and the port industrial area. AR 398. The record in this case indicates:
The [Thea Foss] Waterway visually and physically connects surrounding districts. The Waterway's historic past and working waterfront, combined with new cultural, recreational, residential, office and retail uses, will create a lively, urban environment. A linear waterfront park will link together a variety of attractive, ground level public activities and uses accessible to all of Tacoma's citizens and to the region.
Administrative Record (AR) at 396. At one time, Thea Foss Waterway was a federally designated Superfund[1] site but the City's comprehensive design and development plan has envisioned "turn[ing] Thea Foss Waterway into a showcase for Tacoma" through coordinated environmental clean-up efforts and mixed-use public and private development. AR at 396. Toward that goal, the City has constructed a 120-foot wide public esplanade adjoining the waterway and has facilitated the development of the Museum of Glass and residential buildings such as Albers Mill Lofts, the Esplanade, and Thea's Landing.
¶ 3 On February 9, 2007, the City approved a shoreline substantial development permit (2007 SSDP) authorizing the construction of a 120,000 square foot mixed-use building that included 100 hotel rooms, 22 residential units, and retail/commercial uses on vacant property at "Foss Site-4." AR at 573. Foss Site-4 is located between the Esplanade building, which contains 176 condominium units and a restaurant, and the Thea's Landing building, which contains 236 residential units and retail space.
¶ 4 KS Tacoma owns the Hotel Murano, which is located approximately five city blocks from Foss Site-4. KS Tacoma did not appeal the 2007 SSDP. On March 27, 2008, the City approved a permit revision that *880 decreased the number of residential units to 16 and increased the number of hotel rooms to 160. KS Tacoma did not appeal the 2008 permit revision.
¶ 5 Sometime after the City approved the first permit revision, Hollander purchased Foss Site-4. Hollander applied for a second permit revision (2009 revision), which the City approved on December 17, 2009. The 2009 revision eliminated the 16 remaining residential units and increased the number of hotel rooms to 256. The 2009 revision also changed the configuration of the building, replacing the single tower in the original design with two towers connected on the first floor by a single story structure. Additionally, the 2009 revision increased the first floor space by five percent,[2] and increased the total floor space from 180,000 square feet to 213,000 square feet.
¶ 6 On January 8, 2010, KS Tacoma filed a petition for review of the City's approval of the 2009 revision, asserting that it was inconsistent with the Shorelines Management Act (SMA)[3] and the City's Shoreline Master Program.[4] AR 1-8. On March 11, 2010, Hollander and the City brought summary judgment motions to dismiss KS Tacoma's petition for review, asserting that KS Tacoma lacked standing to challenge the 2009 revision. Hollander and the City also argued that several of KS Tacoma's contentions were not properly before the Board because they sought to challenge the 2007 SSDP, which KS Tacoma did not appeal.
¶ 7 On June 10, 2010, the Board issued an order dismissing KS Tacoma's petition for lack of standing. In reaching its decision, the Board stated that it considered only alleged injuries stemming from the 2009 revision because KS Tacoma did not appeal the original 2007 SSDP or the 2008 revision. The Board found that KS Tacoma's asserted injuries to its recreation, view, and aesthetic interests were experienced by third parties and that the general standing doctrine did not allow KS Tacoma "to establish standing by asserting other's legal rights." AR at 561.
¶ 8 Alternatively, the Board found that, even if it were to consider the alleged injuries to third parties, KS Tacoma failed to establish that the 2009 revision would cause any cognizable harm to those interests. The Board further ruled that "[t]he only injury specific to KS Tacoma is the impact the corporation claims to its reputation, tenor of the community, and diminished future investment," and that this claimed injury is "both speculative and economic and fail[s] to form the basis for KS Tacoma's standing." AR at 567.
¶ 9 KS Tacoma unsuccessfully moved for reconsideration of the Board order dismissing its petition for lack of standing. In its order denying reconsideration, the Board clarified its previous decision:
The Board is not ruling that a corporation could never assert a concrete injury within the zone of interests protected by the SMA. The Board, however, is ruling that a corporation must establish a specific injury that is related to an identifiable corporate interest or right protected by the environmental law at issue.
AR at 575. The Board's order denying reconsideration also reiterated that KS Tacoma had failed to establish associational standing and, thus, it could not assert the interests of third parties to establish its standing to appeal the 2009 revision.[5]
¶ 10 On August 24, 2010, KS Tacoma appealed the Board's orders to Thurston County Superior Court. Hollander and the City applied for direct review to this court under RCW 34.05.518. On October 22, 2010, the Board entered an order granting a certificate of appealability, and we accepted direct review.

*881 ANALYSIS

I. Standard of Review
¶ 1 The Administrative Procedure Act (APA), chapter 34.05 RCW, controls our review of agency actions, including that of the Board. Former RCW 90.58.180(3) (2003); Batchelder v. City of Seattle, 77 Wash.App. 154, 158, 890 P.2d 25 (1995). In reviewing an agency action, we apply the APA standards directly to the agency record. Burnham v. Dep't of Soc. & Health Servs., 115 Wash.App. 435, 438, 63 P.3d 816 (2003). To grant relief from the Board's summary judgment order, we must determine that "[t]he agency has erroneously interpreted or applied the law; [t]he order is not supported by evidence that is substantial when viewed in light of the whole record[; or t]he order is arbitrary or capricious."[6] RCW 34.05.570(3)(d), (e), (i).
¶ 12 We review de novo dismissals of claims on summary judgment under CR 56. Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).
¶ 13 Although the APA does not expressly authorize summary judgments, case law has established that agencies may employ summary proceedings. Kettle Range Conservation Grp. v. Dep't of Natural Res., 120 Wash.App. 434, 456, 85 P.3d 894 (2003). When reviewing an agency's summary judgment order, "we consider the APA standard of review together with the summary judgment standard of review, viewing disputed facts in the light most favorable to the nonmoving party while considering whether the moving party is entitled to judgment as a matter of law if based on undisputed facts." Kettle, 120 Wash.App. at 456, 85 P.3d 894. But the nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits considered at face value." Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986).

II. Standing under the SMA
¶ 14 The SMA limits standing to persons "aggrieved by the granting, denying, or rescinding of a permit on shorelines of the state." Former RCW 90.58.180(1). RCW 34.05.010(14) defines "[p]erson" as, "any individual, partnership, corporation, association, governmental subdivision or unit thereof, or public or private organization or entity of any character, and includes another agency." KS Tacoma, a corporate entity, has the same rights and protections under the SMA as an individual person. To qualify as an "aggrieved" person for purposes of establishing its standing under the SMA, KS Tacoma must put forth factual allegations demonstrating the following conditions:
(1) The agency action has prejudiced or is likely to prejudice [KS Tacoma];
(2) That [KS Tacoma]'s asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and
(3) A judgment in favor of [KS Tacoma] would substantially eliminate or redress the prejudice to [KS Tacoma] caused or likely to be caused by the agency action.
RCW 34.05.530.
¶ 15 These statutory standing conditions are largely drawn from federal case law, and the APA expressly states the Legislature's intent that "courts should interpret provisions of [chapter 35.05 RCW] consistently with decisions of other courts interpreting similar provisions of other states, the federal government, and model acts." RCW 34.05.001. The first and third prongs of the APA standing test are collectively referred to as the "`injury-in-fact'" test, and the second prong is referred to as the "`zone of interests'" test. Allan v. Univ. of Wash, 140 Wash.2d 323, 327, 997 P.2d 360 (2000) (internal quotation marks omitted) (quoting Allan *882 v. Univ. of Wash, 92 Wash.App. 31, 36, 959 P.2d 1184 (1998), aff'd, 140 Wash.2d 323, 997 P.2d 360). KS Tacoma bears the burden of establishing its standing to contest the 2009 revision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

A. Zone of Interest
¶ 16 To meet the zone of interest test for standing, KS Tacoma must show that the legislature intended the SMA to protect its asserted interests in the land use, aesthetics, and view impacts of the 2009 revision. Save a Valuable Env't (SAVE) v. City of Bothell, 89 Wash.2d 862, 866, 576 P.2d 401 (1978). The City appears to concede, and Hollander does not contest, that KS Tacoma's asserted interests are within the SMA's zone of interests. We agree.
¶ 17 RCW 90.58.020 states in relevant part:
The department ... and local government... shall give preference to uses in the following order of preference which:
(1) Recognize and protect the statewide interest over local interest;
(2) Preserve the natural character of the shoreline;
(3) Result in long term over short term benefit;
(4) Protect the resources and ecology of the shoreline;
(5) Increase public access to publicly owned areas of the shorelines;
(6) Increase recreational opportunities for the public in the shoreline;
(7) Provide for any other element as defined in RCW 90.58.100 deemed appropriate or necessary.
In the implementation of this policy the public's opportunity to enjoy the physical and aesthetic qualities of natural shorelines of the state shall be preserved to the greatest extent feasible consistent with the overall best interest of the state and the people generally.
¶ 18 RCW 90.58.020's hierarchy of land use preferences and stated policy of protecting the public's enjoyment of our State's shorelines clearly show that the legislature intended to protect KS Tacoma's asserted interests in land use, aesthetic, and view impacts of shoreline development. See also Hunt v. Anderson, 30 Wash.App. 437, 440-41, 635 P.2d 156 (1981) (SMA and general shorelines use activities regulations demonstrated intent to protect use of public and private property preventing obstruction of scenic views). "[A]lthough the zone of interest test serves as an additional filter limiting the group which can obtain judicial review of an agency decision, the `test is not meant to be especially demanding.'" Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council, 129 Wash.2d 787, 797, 920 P.2d 581 (1996) (quoting Clarke v. Sec. Ind. Ass'n, 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)). Accordingly, we hold that KS Tacoma has met the zone of interest test.

B. Injury-In-Fact
¶ 19 KS Tacoma contends that the land use, aesthetic, and view impacts of the Hollander revision show that it will suffer an injury-in-fact sufficient to demonstrate its standing to challenge the 2009 revision. Hollander and the City argue that KS Tacoma, as a for-profit corporation, has failed to show it will personally suffer any injury from the 2009 revision apart from a speculative economic injury as a competitor to the proposed hotel development.[7] To the extent this argument would diminish KS Tacoma's rights as a "person" under RCW 34.05.010(14), we reject this argument based on an asserted distinction between a corporation and an individual.
¶ 20 To meet the injury-in-fact test, KS Tacoma must put forth material issues of fact showing that (1) the 2009 revision prejudices or is likely to prejudice it and (2) a decision revoking the 2009 revision would redress such prejudice. RCW 34.05.530; Allan, 140 Wash.2d at 327, 997 P.2d 360. The prejudice prong of the injury-in-fact test requires *883 KS Tacoma to allege that it will be "`specifically and perceptibly harmed'" by the 2009 revision. Trepanier v. City of Everett, 64 Wash.App. 380, 382, 824 P.2d 524 (1992), (quoting SAVE, 89 Wash.2d at 866, 576 P.2d 401). When a person or corporation alleges a threatened injury, as opposed to an existing injury, the person or corporation must show an immediate, concrete, and specific injury to themselves. Trepanier, 64 Wash.App. at 383, 824 P.2d 524 (citing Roshan v. Smith, 615 F.Supp. 901, 905 (D.D.C. 1985)). "If the injury is merely conjectural or hypothetical, there can be no standing." Trepanier, 64 Wash.App. at 383, 824 P.2d 524, (citing United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 688-89, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)).
¶ 21 The redress prong of the injury-in-fact test requires KS Tacoma to put forth material issues of fact showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing Lujan, 504 U.S. at 560-61), 112 S.Ct. 2130.
¶ 22 As an initial matter, KS Tacoma contends that we should examine the 2009 revision's impact on the entire Foss site-4 project to determine whether it has sufficiently alleged an injury-in-fact to defeat summary judgment for lack of standing. The City and Hollander assert that, because KS Tacoma did not appeal the original 2007 SSDP or the 2008 revision, we must limit our review to KS Tacoma's alleged injuries stemming from the 2009 revision's changes to the 2008 revision. We agree with the City and Hollander.
¶ 23 Former RCW 90.58.180(1) provides that "[a]ny person aggrieved by the granting... of a permit on shorelines of the state ... may ... seek review from the [Board] by filing a petition for review within twenty-one days of the date of filing [of the Board's decision]." Because KS Tacoma did not appeal the City's grant of the original 2007 SSDP or the 2008 revision within the statutorily required time period, it cannot now challenge the validity of the 2007 SSDP or the 2008 revision. Moreover, WAC 173-27-100(8) provides that appeals from permit revisions "shall be filed within twenty-one days from the date of receipt of the local government's action by the department.... If an appeal is successful in proving that a revision is not within the scope and intent of the original permit, the decision shall have no bearing on the original permit." Thus, even if KS Tacoma prevails in proving the invalidity of the 2009 revision, such invalidity would have no bearing on the 2007 SSDP.
¶ 24 KS Tacoma argues that, notwithstanding WAC 173-27-100(8)'s limitations on the effect of a successful appeal from a permit revision, Hollander could not proceed under the original 2007 SSDP if the 2009 revision were voided because of the two-year time limitation for commencing construction activities (with a potential one-year extension) under RCW 90.58.143. KS Tacoma contends that a revocation of the 2009 revision would result in Hollander having to apply for a new SSDP and, thus, would allow KS Tacoma to broadly challenge the impacts of the entire Hollander proposal as not being consistent with the SMA or the City's Shoreline Master Program.
¶ 25 But KS Tacoma ignores subsection (4) of the statute which states in part:
The permit time periods ... do not include the time during which a use or activity was not actually pursued due to the pendency of administrative appeals or legal actions or due to the need to obtain any other government permits and approvals for the development that authorize the development to proceed, including all reasonably related administrative or legal actions on any such permits or approvals.
RCW 90.58.143(4).
¶ 26 KS Tacoma's argument that defeating the 2009 revision would vacate the original 2007 permit and require a new permit application process allowing it to challenge the scope of the entire Hollander proposal fails. Accordingly, in determining whether KS Tacoma has sufficiently alleged an injury-in-fact to establish its standing to challenge the 2009 revision, we examine only KS Tacoma's *884 claimed injuries stemming from the 2009 revision's changes to the 2008 revision. We now address each of KS Tacoma's claimed injuries.

i. Land Use Injury
¶ 27 First, KS Tacoma alleges a threatened injury stemming from the 2009 revision's proposed changes in land use that eliminate residential units and increase the number of hotel rooms. KS Tacoma asserts that the 2009 revision's proposed change in land use injures it because "the decision to create a limited service, branded hotel will lessen appeal for future development and investment, will impact the land uses in the immediate vicinity, and will frustrate the City's efforts to develop this area with a mix of high-end residential and commercial uses." Br. of Appellant at 41. Because KS Tacoma's alleged land use injury is speculative and lacks factual support, it fails the prejudice prong of the injury-in-fact test.
¶ 28 Trepanier is instructive when addressing threatened injuries arising from land use actions. In Trepanier, the owner of a civil engineering and land use consulting firm appealed the City of Everett's determination of nonsignificance (DNS) under the State Environmental Policy Act (SEPA).[8] 64 Wash.App. at 381, 824 P.2d 524. Trepanier alleged that Everett's new zoning code, which reduced development potential within Everett, would cause adverse environmental impacts in unincorporated Snohomish County. Trepanier, 64 Wash.App. at 382, 824 P.2d 524. Division One of this court held that Trepanier lacked standing because he failed to allege an injury-in-fact stemming from Everett's issuance of a DNS:
[T]he only threatened injury alleged is that several sections of the new zoning code will reduce allowable densities and development potential within Everett, thereby transferring growth that cannot occur in Everett to unincorporated Snohomish County. His argument is based on the unsupported assumption that reducing densities in some areas will necessarily result in reduced development potential within Everett to such an extent that development will be forced into unincorporated Snohomish County. Trepanier's argument is fatally flawed because his bare assertion that the new code will likely create serious adverse impacts on unincorporated Snohomish County has absolutely no factual support in the record.
Trepanier, 64 Wash.App. at 383-84, 824 P.2d 524. KS Tacoma has similarly failed to support its bare assertion that the Hollander revision will have a serious adverse impact on future development in the area with any facts in the record.
¶ 29 To support its assertion that the 2009 revision will negatively impact future development, KS Tacoma cites only the affidavits of Howard Jacobs, part owner of KS Tacoma, and Mark Van Cooney, general manager of the Hotel Murano. Br. of Appellant at 41; AR 159, 176. Both Jacobs's and Cooney's affidavits conclude that the decision to create a limited service hotel will lessen appeal for future development and investment but they do not provide factual support for their conclusions. AR 159, 176. KS Tacoma cannot rely on Jacobs's and Cooney's bare assertions, nor can they rely on the affidavits being considered at face value. Seven Gables, 106 Wash.2d at 13, 721 P.2d 1. KS Tacoma has not presented factual support for its assertion that the 2009 revision's elimination of residential units and the increase in the number of hotel rooms will negatively affect future development in the area. Accordingly, KS Tacoma's alleged injury from a change in land use is conjectural and cannot support its standing to challenge the revision.

ii. Aesthetic Enjoyment Injury
¶ 30 Next, KS Tacoma claims an injury-in-fact stemming from the 2009 revision's interference with the aesthetic enjoyment of the Thea Foss Waterway. Specifically, KS Tacoma claims that the 2009 revision does "not have any special aesthetic qualities" and will not be a "world class architectural wonder[ ]" because the proposal calls for "walls of a fake brick façade and other formulaic architecture with no respect for the aesthetic *885 of the area." Br. of Appellant at 38. Because KS Tacoma fails to demonstrate that a decision revoking the 2009 revision will redress its alleged aesthetic injury, it fails the redress requirement of the injury-in-fact test.
¶ 31 Here, KS Tacoma appealed only the 2009 revision and did not timely appeal the original 2007 SSDP or the 2008 permit revision. WAC 173-27-100 governs appeals from state shoreline development permit revisions and provides in relevant part:
A permit revision is required whenever the applicant proposes substantive changes to the design, terms or conditions of a project from that which is approved in the permit. Changes are substantive if they materially alter the project in a manner that relates to its conformance to the terms and conditions of the permit, the master program and/or the policies and provisions of chapter 90.58 RCW. Changes which are not substantive in effect do not require approval of a revision.
When an applicant seeks to revise a permit, local government shall request from the applicant detailed plans and text describing the proposed changes.
(1) If local government determines that the proposed changes are within the scope and intent of the original permit, and are consistent with the applicable master program and the act, local government may approve a revision.
(2) `Within the scope and intent of the original permit' means all of the following:
(a) No additional over water construction is involved except that pier, dock, or float construction may be increased by five hundred square feet or ten percent from the provisions of the original permit, whichever is less;
(b) Ground area coverage and height may be increased a maximum of ten percent from the provisions of the original permit;
(c) The revised permit does not authorize development to exceed height, lot coverage, setback, or any other requirements of the applicable master program except as authorized under a variance granted as the original permit or a part thereof;
(d) Additional or revised landscaping is consistent with any conditions attached to the original permit and with the applicable master program;
(e) The use authorized pursuant to the original permit is not changed; and
(f) No adverse environmental impact will be caused by the project revision.
. . . .
(8) Appeals shall be in accordance with RCW 90.58.180 and shall be filed within twenty-one days from the date of receipt of the local government's action by the department.... Appeals shall be based only upon contentions of noncompliance with the provisions of subsection (2) of this section.... If an appeal is successful in proving that a revision is not within the scope and intent of the original permit, the decision shall have no bearing on the original permit.
Under WAC 173-27-100, permit revisions are not conditioned on a developer's adherence to the original permit's aesthetic design. And WAC 173-27-100(8) provides that a successful appeal from a permit revision has no bearing on the original permit.
¶ 32 Furthermore, federal constitutional standing requires that an injury must be fairly traceable to the challenged action, and relief from the injury must be likely to follow from a favorable decision. Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38-41, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). APA standing analysis similarly requires a party to demonstrate that "[a] judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action." RCW 34.05.530.
¶ 33 Although KS Tacoma is highly critical of the proposed building design, it has not alleged any direct and specific harm flowing from an "unattractive" building design. Br. of Appellant at 38. Instead, KS Tacoma merely concludes that it "has a concrete and personal interest in the aesthetics of the Thea Foss Waterway that will be harmed by the City's approval of the Hollander development proposal," without providing factual *886 support for this claim in the record. Br. of Appellant at 36-37.
¶ 34 Moreover, even if the Board voided the City's issuance of a permit revision to Hollander to construct two "limited service, branded hotel[s]" that provide less-than "high-end residential and commercial uses," as argued by KS Tacoma, it is not likely that the decision would provide KS Tacoma relief from the alleged aesthetic impacts of the 2009 revision because Hollander would remain free to finish its project with its choice of aesthetic design, not one guaranteed to please KS Tacoma. Br. of Appellant at 41. Thus, KS Tacoma has not asserted material issues of fact relating to the aesthetics or the redressability of the alleged injury that preclude summary judgment in favor of the City and Hollander on the 2009 revision.

iii. View Impact Injury
¶ 35 Finally, KS Tacoma asserts an injury from the view impact of the Hollander revision. Similar to the alleged aesthetics injury, a favorable Board decision is unlikely to redress an alleged injury stemming from KS Tacoma's alleged view impact of the 2009 revision. Thus, we hold that KS Tacoma fails to allege an injury-in-fact arising from the 2009 revision with regard to the view impact.
¶ 36 WAC 173-27-100(2)(b) allows a developer to increase the maximum height of a building up to 10 percent from the building height approved under the original SSDP. Here the 2007 SSDP proposed a maximum building height of 97 feet 9 inches. CP 248. And the 2009 revision increased the building height by only one inch, well within the 10 percent height increase WAC 173-27-100(2)(b) allows. In fact, Hollander and the City presented evidence that the view impact from the Hotel Murano would decrease slightly under the 2009 revision because of the two tower design. Because the 2009 revision's increase in building height is within WAC 173-27-100(2)(b)'s allowable limits and, thus, does not provide a basis for revocation of the 2009 revision decision, a decision revoking the 2009 permit revision on any ground would not provide KS Tacoma with relief from the view impact caused by the one-inch height change in the 2009 revision. Accordingly, KS Tacoma has not met the redress prong of the injury-in-fact test relating to the view impact.
¶ 37 The United States Supreme Court has recognized that demonstrating the redress element of the injury-in-fact test is more difficult when, as here, the government action or inaction being challenged is directed at a third party rather than the party asserting injury:
When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction-and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," ASARCO Inc. v. Kadish, 490 U.S. 605, 615[, 109 S.Ct. 2037, 104 L.Ed.2d 696] (1989) (opinion of KENNEDY, J.); see also Simon, 426 U.S.] at 41-42[, 96 S.Ct. 1917]; and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. E.g., Warth[ v. Seldin, 422 U.S. 490,] 505[, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)]. Thus, when the plaintiff is not himself the object of the government action *887 or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish. Allen [v. Wright, 468 U.S. 737,] 758[, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)]; Simon, [426 U.S.] at 44-45[, 96 S.Ct. 1917], Warth, [422 U.S.] at 505[, 95 S.Ct. 2197].
Lujan, 504 U.S. at 561-62, 112 S.Ct. 2130.
¶ 38 KS Tacoma has not met the admittedly difficult task of demonstrating or putting forth material issues of fact showing that Hollander or the City would make future choices that redress KS Tacoma's alleged aesthetics and view impact injuries if the 2009 revision were revoked. Such choices could involve Hollander modifying a permit revision application in a way that would not alleviate KS Tacoma's alleged injuries, or the City could issue a new permit revision with specifications similar to those that KS Tacoma claims create an injury-in-fact to it. Here, KS Tacoma's asserted land use injuries are conjectural and lack factual support, and the aesthetic and view impact injuries would not be redressed by a decision in its favor. Accordingly, KS Tacoma cannot satisfy the injury-in-fact test and we agree with the Board that KS Tacoma does not have standing to appeal the 2009 revision, nor, on this record, could it survive the summary judgment motion since it relied on speculation and argumentative assertions that unresolved factual issues remained and the trial court need not have considered its affidavits at face value. Seven Gables Corp., 106 Wash.2d at 13, 721 P.2d 1. Thus, we affirm the Board's summary judgment order in favor of the City and Hollander on the 2009 revisions.

III. Associational Standing
¶ 39 KS Tacoma alternatively asserts that if it does not have standing to appeal the 2009 revision in its own right, it could assert associational standing on behalf of its members, which KS Tacoma claims includes its owners, employees, and Hotel Murano guests. We disagree.
¶ 40 Generally, a party cannot rely on injuries to third parties to establish standing. See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). The United States Supreme Court has, however, recognized an exception to this general standing doctrine where an association claims to represent its member's interests. Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).
¶ 41 An association has standing to bring suit on behalf of its members if it satisfies three requirements: "([1]) its members would otherwise have standing to sue in their own right; ([2]) the interests it seeks to protect are germane to the organization's purpose; and ([3]) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343, 97 S.Ct. 2434. An association generally has standing to sue as long as one of its members has standing. E. Gig Harbor Improvement Ass'n v. Pierce County, 106 Wash.2d 707, 710, 724 P.2d 1009 (1986).
¶ 42 Hollander and the City contend that KS Tacoma cannot assert associational standing because, as a for-profit corporation, it is not organized to express the collective interests of its owners, employees, and hotel guests. Hollander and the City thus claim that KS Tacoma does not have any members for which it can assert associational standing. But we need not answer the question of whether a for-profit corporation such as KS Tacoma can assert associational standing for owners, employees, and patrons because it cannot demonstrate that any of its claimed members have standing in his or her own right. As we addressed above, KS Tacoma has failed to raise material issues of fact relating to alleged injuries-in-fact stemming from the Hollander revision.
¶ 43 Although we do not squarely reach whether a for-profit corporation such as KS Tacoma can assert associational standing on behalf of its owners, employees, and patrons, because it has failed to raise material issues of fact as to its claimed members' injuries-in-fact, we note that it would not likely have *888 associational standing under existing case law.
¶ 44 KS Tacoma cites one federal district court case, Overseas Shipholding Group, Inc. v. Skinner, 767 F.Supp. 287 (D.D.C.1991), for the proposition it can assert standing on behalf of its employees. In Overseas Shipholding, the D.C. District Court held that a corporate shipholding company had standing to assert a National Environmental Policy Act[9] claim on behalf of its employees because of the potential risk to employees' health from air and water pollution created by the challenged government action. 767 F.Supp. 287. The Overseas Shipholding court did not hold that a for-profit corporation could assert standing on behalf of its customers, and KS Tacoma has not cited any authority for the proposition that it may assert standing on behalf of its customers. KS Tacoma has similarly not cited any authority for the proposition that a for-profit corporation may assert standing to protect its employees' interests in land use, aesthetics, and view impacts. Further, the Overseas Shipholding associational standing analysis has been narrowed or rejected by later federal district court cases.
¶ 45 In Taubman Realty Grp. Ltd. P'ship v. Mineta, 198 F.Supp.2d 744 (E.D.Va.2002), aff'd, 320 F.3d 475 (4th Cir.2003), a shopping center developer asserted that it had associational standing based on alleged safety and health risks to its employees and patrons. The Taubman court held that the developer could not establish associational standing "[b]ecause the interests at stake [were] not at all `germane' to [the developer's] organizational purposes." 198 F.Supp.2d at 758. The Taubman court explained:
TRG owns and operates a shopping center. TRG is not a citizens group or an association with a demonstrable interest in, or commitment to, environmental or traffic-related causes or concerns. In fact, through the operation of Regency [Mall], TRG ... precipitates some of the very environmental and traffic-related impacts on which it seeks to fasten its standing in this action. TRG has made no showing that environmental, traffic, or general safety interests are "germane" to its organizational purposes in any judicially cognizable manner. It is the burden of TRG to make that showing and its failure to satisfy that burden is fatal to its position on standing.
198 F.Supp.2d at 758 (footnotes omitted). In holding that the developer could not establish associational standing, the Taubman court distinguished Overseas Shipholding:

Overseas Shipholding is inapposite here. As the Federal Defendants properly have recognized, the business owner in Overseas Shipholding was permitted to assert its employees' interests in safe and healthy waterways because those waterways were the employees' direct working environment. In contrast, the plaintiffs in this case seek to assert the interests of employees... in commuting to and from work on public roads, upon which thousands of non-employee citizens travel every day. Those circumstances are far removed from the situation before the court in Overseas Shipholding; and ... no court has stretched the concept of associational standing to the point to which it must be taken to confer standing on TRG or Taubman. To permit the plaintiffs to sue based upon the type of injuries to employees that are alleged ... would necessitate a substantial leap in logic, and an unprecedented expansion in the doctrine of standing, that the Court i[s] not prepared to make.
Taubman, 198 F.Supp.2d at 759 (footnote omitted).
¶ 46 Another federal district court has rejected the Overseas Shipholding associational standing analysis altogether. One Thousand Friends of Iowa v. Mineta, 250 F.Supp.2d 1064 (S.D.Iowa 2002). In holding that a mall limited partnership could not establish associational standing based on an alleged injury to its employees' health, safety, and comfort, the Mineta court noted:
With due respect to the district court's opinion in Overseas Shipholding Group, the Supreme Court's decision in Hunt makes clear that "associational standing" is generally limited to voluntary membership organizations and/or typical trade associations *889 organized to represent a particular group of individuals. Hunt, 432 U.S. at 342-43[, 97 S.Ct. 2434].... Merle Hay Mall does not fit within either of these classifications. Accordingly, the Court declines to follow Overseas Shipholding, and holds Merle Hay Mall does not have standing to bring the present action on the basis of alleged injuries to its employees.
250 F.Supp.2d at 1069.
¶ 47 As Taubman and Mineta demonstrate, even if KS Tacoma had raised a genuine issue of material fact sufficient to demonstrate an injury-in-fact to its claimed members, it could not likely assert associational standing on their behalf under current federal case law.
¶ 48 Accordingly, we affirm the Board's summary judgment order dismissing KS Tacoma's claim for lack of standing.
We concur: PENOYAR, C.J., and WORSWICK, J.
NOTES
[1] The Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. sections 9601-9675.
[2] KS Tacoma does not challenge the Hollander revision's proposed five percent increase in the groundfloor space.
[3] Chapter 90.58 RCW.
[4] Chapter 173-26 WAC.
[5] KS Tacoma assigns error to the Board's order denying reconsideration, but "[a]n order denying reconsideration ... is not subject to judicial review." RCW 34.05.470(5). Accordingly, we limit our review to the Board's original summary judgment order.
[6] Although KS Tacoma asserts that substantial evidence does not support the Board's summary judgment order dismissing their claim for lack of standing, it does not assert that the Board relied on any disputed facts in reaching its decision.
[7] As the alternative to standing in its own right, KS Tacoma asserts it has associational standing to represent its owners, employees, and guests. We address KS Tacoma's associational standing argument below.
[8] Chapter 43.21C RCW.
[9] 42 U.S.C.A. § 4321.