[No. 67420-0-I.   Division One.   October 15, 2012.]

DIANNE M. PATTERSON ET AL., *Appellants*, v. MARIO A. SEGALE ET AL., *Respondents*.

*Diane M. Patterson* and *David E. Engdahl*, pro se.

*Philip A. Talmadge* and *Emmelyn Hart* (of *Talmadge/ Fitzpatrick*); and *Courtney A. Kaylor* (of *McCullough Hill PS*), for respondent Mario Segale.

*Craig D. Knutson, City Attorney*, for respondent City of Burien.

¶1 DWYER, J. — In order to seek judicial review of an agency decision pursuant to the Washington Administrative Procedure Act (APA), chapter 34.05 RCW, a person must demonstrate that he or she is aggrieved or adversely affected by the agency decision. This requires a showing of an injury-in-fact—the person must demonstrate that he or

she is (or will be) specifically and perceptibly harmed by the agency action and, moreover, that this injury will be redressed by a favorable decision by the reviewing court. Where a person alleges an injury that is merely conjectural or hypothetical, there is no standing to seek judicial review.

¶2 This case originated as a challenge by David Engdahl and Dianne Patterson to the grant of a substantial development permit by the City of Burien to Mario Segale for the replacement of a bulkhead on Segale's waterfront property. Both the Shorelines Hearings Board (SHB) and the superior court affirmed the City's permitting decision, and Patterson and Engdahl thereafter appealed to this court. However, following the submittal of briefs, Patterson and Engdahl settled their claims against Segale, thereby withdrawing their challenge to the issuance of the permit and the construction of the bulkhead. Patterson and Engdahl now seek appellate relief only in the form of a declaratory judgment that the King County shoreline master program—applied by the City in granting the shoreline permit to Segale—was inapplicable within the city limits of Burien following the City's incorporation.

¶3 Under these circumstances, Patterson and Engdahl have failed to demonstrate that they are aggrieved or adversely affected within the meaning of the APA. With regard to the SHB's legal conclusion that the King County shoreline master program remains applicable within the city limits of Burien, neither Patterson nor Engdahl is situated differently than is any other member of the public. Because nonspecific and conjectural injuries do not satisfy the injury-in-fact requirement for APA standing, Patterson and Engdahl lack standing to seek further judicial review of the SHB's decision. Accordingly, we affirm.

I

¶4 In August 2009, Mario Segale applied for a substantial development permit to replace a rock bulkhead on his

property, located within the city limits of Burien on the shoreline of Puget Sound. The existing bulkhead, which extended the length of his property, had deteriorated, permitting erosion to occur on the landward side of the bulkhead. The proposed reconstructed bulkhead was to be located within the same footprint as the existing structure. The height of the new bulkhead, however, was to be increased by several feet.

¶5 The City reviewed Segale's shoreline permit application under the State Environmental Policy Act, chapter 43.21C RCW, and issued a "Determination of Nonsignificance." In addition, the City considered the proposal's compliance with the Shoreline Management Act of 1971 (chapter 90.58 RCW), the Department of Ecology's regulations (chapter 173-27 WAC), and Title 25 of the King County Code, which the City considered to be its applicable shoreline master program (SMP). The City concluded that the proposal to replace the bulkhead complied with all applicable requirements and issued a permit for the project on March 8, 2010.

¶6 Patterson and Engdahl, the owners of beachfront property approximately one quarter mile north of the proposed project, thereafter filed a petition with the SHB for review of the City's approval of the shoreline permit.[1] The SHB determined that Patterson and Engdahl had standing to challenge the City's decision based upon the proposed bulkhead's potential to impair their aesthetic enjoyment of the shoreline near their residence.

¶7 Segale moved to dismiss the appeal. The City joined in this motion. In support of the motion, Segale and the City submitted the declaration of a civil engineer experienced with shoreline bulkheads. This expert witness opined that the existing bulkhead needed to be replaced and that the increased height of the replacement bulkhead would have

---

[1] Neither Patterson nor Engdahl appealed from the City's issuance of the Determination of Nonsignificance.

no significant adverse impacts to the beach near the Patterson/Engdahl property. Neither Patterson nor Engdahl introduced evidence controverting the civil engineer's declaration.

¶8 The SHB thereafter dismissed the case by summary judgment. Patterson and Engdahl moved for reconsideration. The SHB denied the motion.

¶9 Patterson and Engdahl then filed a petition for judicial review of the SHB's decision in King County Superior Court. Following oral argument, the superior court denied the petition and dismissed the case.

¶10 Patterson and Engdahl thereafter appealed to this court. After briefs were filed, however, Patterson and Engdahl reached a settlement agreement with Segale that resolved their claims against Segale, including their opposition to the construction of the bulkhead. Patterson and Engdahl joined with Segale in filing a joint motion for voluntary withdrawal of review as to that part of the appeal. The motion stated that "Patterson/Engdahl intend to pursue this appeal only against the City of Burien; and as to such City, only for declaratory relief, as authorized by RCW 34.05.574(1)(b), regarding the applicability of the King County Code Title 25 as the City of Burien's Shoreline Management [sic] Program." Our commissioner granted the motion on February 3, 2012.[2]

II

¶11 Patterson and Engdahl first assert that, although they have settled their claims regarding the City's issuance of the substantial development permit, they are nevertheless entitled to obtain declaratory relief with regard to the

_____

[2] The City thereafter filed a motion to dismiss the appeal on the basis that the case was now moot or, in the alternative, that we lacked the ability to provide the declaratory relief requested. However, because the City had requested an award of attorney fees as a prevailing party, we determined that the case was not moot and denied the City's motion. We reserved the question of whether declaratory relief was available.

City's use of the King County shoreline master program as its own SMP. However, because Patterson and Engdahl now lack standing to seek judicial review of the SHB's decision, they are not entitled to obtain appellate relief.

¶12 The parties agree that the APA governs appellate review of decisions by the SHB. Former RCW 90.58.180(3) (2003); *see, e.g., KS Tacoma Holdings, LLC v. Shorelines Hearings Bd.*, 166 Wn. App. 117, 125, 272 P.3d 876, *review denied*, 174 Wn.2d 1007 (2012). On judicial review of an agency decision, we may "order an agency to take action required by law, order an agency to exercise discretion required by law, set aside agency action, enjoin or stay the agency action, remand the matter for further proceedings, or enter a declaratory judgment order." RCW 34.05.574(1). However, as a threshold matter, in order to seek judicial review of an administrative decision, a person must first meet the standing requirements of the APA.

¶13 As Patterson and Engdahl correctly observe, the SHB determined that they had standing to seek administrative review of the City's issuance of the substantial development permit to Segale. A party's standing to participate in an administrative proceeding, however, is not necessarily coextensive with standing to challenge an administrative decision in a court. *See, e.g., Med. Waste Assocs., Inc. v. Md. Waste Coal., Inc.*, 327 Md. 596, 611, 612 A.2d 241, 249 (1992) (holding that the plaintiff association was a "party" with standing at the administrative level but lacked standing to challenge the final decision in court). Accordingly, it remains our task, applying the same standards as the superior court, to determine whether Patterson and Engdahl now have standing to seek judicial review of the SHB's decision in this court.[3]

---

[3] Patterson and Engdahl contend that the availability of appellate review should be determined solely by the standard set forth in RCW 34.05.526, which stipulates that "[a]n aggrieved party may secure appellate review of any final judgment of the superior court." Although it is no doubt true that a party must demonstrate that he or she is aggrieved within the meaning of RCW 34.05.526 in

¶14 As noted above, judicial review of such decisions is governed by the APA. Pursuant to the APA, "[a] person has standing to obtain judicial review of agency action if that person is aggrieved or adversely affected by the agency action."[4] RCW 34.05.530. A person is "aggrieved or adversely affected" only where all of the following conditions are present:

(1) The agency action has prejudiced or is likely to prejudice that person;

(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

RCW 34.05.530.

¶15 Our Supreme Court has explained that the first and third parts of the APA standing test are collectively referred to as the "injury-in-fact" test.[5] *Allan v. Univ. of Wash.*, 140 Wn.2d 323, 327, 997 P.2d 360 (2000). In order

---

order to seek appellate review of a superior court decision, *see Tinker v. Kentucky Fried Chicken*, 95 Wn. App. 761, 764, 977 P.2d 627 (1999), it is also true that we sit in the same position as the superior court when reviewing a challenge to an agency decision pursuant to the APA. *Mellish v. Frog Mountain Pet Care*, 172 Wn.2d 208, 212, 257 P.3d 641 (2011). Accordingly, just as the superior court was required to do, we must apply the APA standing requirements set forth in RCW 34.05.530 to determine the availability of judicial review in this case.

[4] The APA defines an "agency" to include "any state board, commission, department, institution of higher education, or officer, authorized by law to make rules or to conduct adjudicative proceedings." RCW 34.05.010(2). "Agency action" includes the adoption or application of an agency rule or order. RCW 34.05.010(3). Here, the SHB's order affirming the City's permitting decision constitutes agency action.

[5] The second part of the APA standing test is referred to as the "zone of interest" test, which "focuses on whether the Legislature intended the agency to protect the party's interests when taking the action at issue." *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 739-40, 887 P.2d 891 (1995). As discussed below, in this case, the injury-in-fact test is dispositive with regard to the availability of judicial review of the SHB's decision and, accordingly, we need not determine whether the interests asserted by Patterson and Engdahl satisfy the zone of interest test.

to satisfy the prejudice requirement of the test, a person must allege facts demonstrating that he or she is " 'specifically and perceptibly harmed' " by the agency decision. *Trepanier v. City of Everett*, 64 Wn. App. 380, 382-83, 824 P.2d 524 (1992) (quoting *Save a Valuable Env't v. City of Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)). When a person alleges a threatened injury, as opposed to an existing injury, the person must demonstrate an "immediate, concrete, and specific injury to him or herself." *Trepanier*, 64 Wn. App. at 383 (citing *Roshan v. Smith*, 615 F. Supp. 901, 905 (D.D.C. 1985)). "If the injury is merely conjectural or hypothetical, there can be no standing." *Trepanier*, 64 Wn. App. at 383 (citing *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 688-89, 93 S. Ct. 2405, 37 L. Ed. 2d 254 (1973)).

¶16 In order to meet the redressability requirement of the injury-in-fact test, the person must demonstrate that it is " 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.' " *KS Tacoma Holdings*, 166 Wn. App. at 129 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). The person challenging an administrative decision bears the burden of establishing his or her standing to contest the decision. *See KS Tacoma Holdings*, 166 Wn. App. at 127.

¶17 Here, Patterson and Engdahl must demonstrate both that they are prejudiced by the SHB's order and that such prejudice would be redressed by a favorable decision by this court. Two aspects of the administrative order are at issue. The first source of potential prejudice stems from the SHB's determination that the King County SMP continues to apply within the city limits of Burien following the City's incorporation. However, this injury does not satisfy the prejudice requirement of the injury-in-fact test. In essence, Patterson and Engdahl assert only that they may be harmed by a future permitting decision in which the City utilizes the King County SMP as its own

SMP. Such a nonspecific and conjectural injury is insufficient to impart standing as an aggrieved party. Indeed, with respect to this aspect of the SHB's decision, Patterson and Engdahl are no differently situated than are any other members of the public.

¶18 The second source of possible prejudice is the SHB's affirmance of the City's permitting decision. In their appearance before the SHB, Patterson and Engdahl asserted standing based upon the potential of the proposed bulkhead to produce "a negative effect on the Petitioners' esthetic enjoyment of the shoreline in this area." Given the SHB's resolution of their claims, this injury is all the more immediate, concrete, and specific. However, with regard to this aspect of the order, a favorable decision by this court cannot redress the asserted injury. Because Patterson and Engdahl have settled their claims against Segale and no longer seek judicial review of the City's decision to grant the permit, a decision by this court will not remedy the asserted negative effects of the replacement bulkhead on Patterson's or Engdahl's aesthetic enjoyment of the shoreline. The replacement bulkhead has been constructed and will remain in place regardless of our decision in this appeal.

¶19 Neither aspect of the SHB's order now gives rise to an injury-in-fact. Accordingly, Patterson and Engdahl lack standing to seek judicial review of this administrative order.

### III

¶20 The City requests an award of attorney fees pursuant to RCW 4.84.370(2), which provides that where a city's permitting decision is upheld by the superior court and on appeal, the city may recover such fees. Because we affirm the City's permitting decision, the City is entitled to an award of fees as a prevailing party on appeal. Upon

proper application, our court's commissioner will enter an appropriate order.

¶21 Affirmed.

SPEARMAN, A.C.J., and SCHINDLER, J., concur.